UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| TERRANCE NELSON CATES,  )<br>  )<br>  Plaintiff,  )<br>v.  )  20-mc-_____<br>  )<br>ZELTIQ AESTHETICS, INC.  )<br>  )<br>  Defendant.  )  |  |

# NON-PARTY DR. R. ROX ANDERSON'S
# MOTION TO QUASH DEPOSITION SUBPOENA AND FOR PROTECTIVE ORDER

INTRODUCTION

Non-party Dr. R. Rox Anderson, a resident of Boston, moves pursuant to Federal Rules of Civil Procedure 45 and 26 to quash a deposition subpoena and for a protective order. The subpoena was issued in connection with a matter pending in the United States District Court for the Middle District of Florida, *Cates v. Zeltiq Aesthetics, Inc.,* No. 19-cv-01670, in which Terrence Cates, a resident of the Bahamas, has sued Zeltiq Aesthetics, Inc., the manufacturer of a device used to perform a fat-removal procedure called "CoolSculpting." The plaintiff alleges he suffered injury after receiving "CoolSculpting" treatment at a spa in Orlando. A copy of the Subpoena is attached to this motion as **Exhibit A**.

Dr. Anderson is a Professor of Dermatology at the Harvard Medical School and the Director of the Wellman Center for Photomedicine at Massachusetts General Hospital. He has no direct connection to Mr. Cates or this litigation. Dr. Anderson has not treated Mr. Cates, has not reviewed his medical treatment, history or conditions, has not seen or spoken to Mr. Cates or any of his treating physicians, and he is not a retained expert witness. (See Declaration of Dr. Anderson,

3472023

previously submitted in the Middle District of Florida, attached hereto as **Exhibit B**, ¶¶ 3 and 8). Dr. Anderson is one of the world's leading researchers in the field of laser dermatology. Plaintiff seeks to depose Dr. Anderson as an uncompensated expert witness in order to advance his claims against Zeltiq. (*Id*., ¶ 2).

Dr. Anderson's only arguably relevant connection to this case is that research he and his colleagues conducted in the early 2000s led to the development of a non-invasive method for selectively cooling subcutaneous fat, thereby inducing the breakdown of fat cells in the body. (*Id*., ¶ 4). This technique, called cryolipolysis, was later commercially developed by Defendant Zeltiq Aesthetics, Inc. ("Zeltiq") under the name CoolSculpting. *Id*. And, in 2014, several years after the introduction of CoolSculpting, Dr. Anderson co-authored an article concerning a known but uncommon potential side effect of the cryolipolysis procedure called Paradoxical Adipose Hyperplasia ("PAH").[1] *Id*., ¶ 6. Plaintiff alleges he suffers from PAH as a result of receiving CoolSculpting treatment.

The information Plaintiff seeks to elicit from Dr. Anderson can be obtained from other sources, including Plaintiff's treating physicians and retained experts who, of course, may rely on Dr. Anderson's published writings. There is no substantial need for Plaintiff to conduct Dr. Anderson's deposition in this case, and requiring him to appear at such a deposition would subject him to an undue burden.

In addition, allowing Dr. Anderson's deposition under the circumstances of this case creates a potential chilling effect on the ability of medical professionals and other scientists to conduct research without fear of being involuntarily compelled to provide sworn testimony in

---

[1] *See* Jalian, H. R., Avram, M. M., Garibyan, L., Mihm, M. C., & Anderson, R. R. (2014), Paradoxical adipose hyperplasia after cryolipolysis. *JAMA dermatology*, 150(3), 317–319.

litigation in which they are not involved. Numerous courts have recognized this prospect as an inherent danger to the advancement of medicine and science. *See, e.g., In re Fosamax Products Liability Litigation,* 2009 WL 2395899, at *4 (S.D.N.Y. Aug. 4, 2009) ("Compelling testimony from a third party researcher risks chilling participation in beneficial public research"); *Solarex Corp. v. Arco Solar, Inc.,* 121 F.R.D. 163, 180 (E.D.N.Y. 1988) (denying motion to compel in order to protect the "confidentiality of the peer-review process"); *Plough Inc. v. National Academy of Sciences*, 530 A.2d 1152, 1160 (D.C. Ct. App.1987) (affirming protective order granted to the National Academy of Sciences due to "the chilling effects of disclosure"); *see also, Dow Chemical Co. v. Allen,* 672 F.2d 1262, 1277 (7th Cir. 1982) (upholding district court's refusal to enforce subpoenas that were "an intrusion into university life which would risk substantially chilling the exercise of academic freedom").

Rule 45 provides that "[o]n timely motion, the court for the *district where compliance is required* must quash or modify a subpoena that," among other things, "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(emphasis supplied). Dr. Anderson previously sought a protective order from the Middle District of Florida, where the underlying action is pending, but the court ruled that Dr. Anderson is required to bring his motion here. A copy of the court's May 11, 2020 decision is attached hereto as **Exhibit C**.[2]

In further support of his motion, Dr. Anderson states as follows.

---

[2] Before Dr. Anderson filed the motion for a protective order that was the subject of the Florida court's May 11, 2020 ruling, counsel for Plaintiff agreed to postpone Dr. Anderson's deposition to May 20, 2020, pending a ruling on the motion. After the May 11 ruling, counsel for Dr. Anderson repeatedly emailed and left voicemails for Plaintiff's counsel on May 16 and 18 to request a similar continuance of the May 20 deposition until after resolution of this motion, and also to conference the motion under Local Rule 7.1. Counsel for Dr. Anderson emailed Plaintiff's counsel yet again on May 19, to confirm his understanding that in light of her non-response, the deposition would not be taking place the following day. Counsel for Plaintiff again did not respond--until 1:30 p.m. on May 20, when she revealed that she had summoned a court reporter to hold the deposition that morning, and that the court reporter had prepared a certificate of non-attendance of Dr. Anderson.

3

3472023

FACTUAL BACKGROUND

A.   Dr. Anderson's Background

Dr. R. Rox Anderson is a Professor of Dermatology at Massachusetts General Hospital ("MGH") and the Harvard Medical School, and serves as the Director of the Wellman Center for Photomedicine at MGH. (Ex. B, Dr. Anderson Dec., ¶ 2). He is also an adjunct Professor of Health Sciences and Technology at the Massachusetts Institute of Technology.[3] (*Id.*) Dr. Anderson has been awarded over 60 patents and has authored or co-authored over 250 scientific books and papers. Among his other contributions, Dr. Anderson conceived and developed many of the non-scarring laser treatments now widely used in medical care. These include treatments for birthmarks, microvascular and pigmented lesions, and tattoo and permanent hair removal. Dr. Anderson has also contributed to treatment for vocal cords, kidney stones, glaucoma, heart disease, photodynamic therapy for cancer and acne, and optical diagnostics.[4]

Research conducted by Dr. Anderson and his colleagues at the Wellman Center in the early 2000s led to the development of a non-invasive method for selectively cooling subcutaneous fat, thereby inducing the breakdown of fat cells in the body.[5] (*Id.*, ¶ 4). This technique, called cryolipolysis, was later commercially developed by Zeltiq Aesthetics, Inc. ("Zeltiq") under the name CoolSculpting. *Id.* In 2014, several years after the introduction of CoolSculpting, Dr. Anderson co-authored an article concerning a known but uncommon potential side effect of the cryolipolysis procedure called Paradoxical Adipose Hyperplasia ("PAH"), in which a small

---

[3] *See* https://wellman.massgeneral.org/faculty-anderson-pi.htm; https://hst.mit.edu/faculty-research/faculty/anderson-r-rox .

[4] *See* https://wellman.massgeneral.org/faculty-anderson-pi.htm.

[5] *See* https://www.invent.org/inductees/rox-anderson.

number of patients experience enlargement and in some cases hardening of fat in the treated area.[6] (*Id.*, ¶ 6). Dr. Anderson has not studied, conducted research, or written about cryolipolsis and PAH since his article was published in 2014. (*Id.*) Although Dr. Anderson has some knowledge about cryolipolysis and PAH from his work prior to 2014, others have more up-to-date information on that topic. *Id.*

### B.   Plaintiff's Allegations

According to the Amended Complaint in the Florida action, Plaintiff, a citizen of the Commonwealth of the Bahamas, visited a medical spa in Orlando, Florida to have the CoolSculpting procedure performed. (**Exhibit D**, Amended Complaint, ¶¶ 5, 84). In February and May of 2018, Plaintiff allegedly had CoolSculpting administered at the spa. (*Id.*, ¶¶ 87, 92). In July 2018, Plaintiff allegedly began feeling a hardness develop in his abdomen (*id.*, ¶ 95), and in October 2018, was diagnosed with PAH. (*Id.*, ¶ 97). Plaintiff then brought this action against Zeltiq, the manufacturer of CoolSculpting. (*Id.*, ¶ 1).

### C.   Plaintiff's Stated Purpose for Seeking Dr. Anderson's Deposition

Plaintiff has stated that Dr. Anderson is a fact witness because he "has in-depth knowledge about Defendant's Coolsculpting device and Paradoxical Adipose Hyperplasia." (*Cates v. Zeltiq Aesthetics, Inc.,* No. 19-cv-01670 (M.D. Fla.), Doc. No. 34, p. 1) Plaintiff contends that "Dr. Anderson's deposition is crucial to establishing Plaintiff's claims in this lawsuit because Dr. Anderson has made public statements regarding the CoolSculpting device which differ greatly from the statements made by Zeltiq in its responses to Plaintiff's discovery requests." (*Id.*, p. 2). Plaintiff further contends that "Zeltiq has officially denied every allegation that Dr. Anderson has

---

[6] *See* Jalian, H. R., Avram, M. M., Garibyan, L., Mihm, M. C., & Anderson, R. R. (2014). Paradoxical adipose hyperplasia after cryolipolysis. *JAMA dermatology*, 150(3), 317–319.

5

publicly admitted in regard to the CoolSculpting device, therefore Plaintiff needs to explore these matters further through his deposition." (*Id.*)

Specifically, plaintiff has pointed to Zeltiq's allegedly insufficient or inaccurate responses to the following requests for admissions—and Dr. Anderson's supposedly contrary public statements about the same subjects—as justifying the deposition:

- "Admit that the purpose of the CoolSculpting® system device is to reduce adipose tissue (fat) via a noninvasive procedure." (Pl's RFA No. 2).

- "Admit that all of Defendant's CoolSculpting® system devices are known to cause Paradoxical Adipose Hyperplasia (hereinafter 'PAH')." (Pl's RFA No. 3).

- "Admit that PAH does not resolve on its own." (Pl's RFA No. 7)

(Ex. E, Plaintiffs' Opposition to Motion for Protective Order filed in M.D. Fla., pp. 11-12). Indeed, plaintiff goes so far as to declare that "[h]ad Zeltiq answered Plaintiff's Request for Admissions in an honest and fair way, Plaintiff would probably not have sought out Dr. Anderson's testimony." (*Id.*, p. 4).

For purposes of this motion, there is no need to delve into the merits of Zeltiq's discovery responses and Dr. Anderson's public statements. Plaintiff may attempt to prove his claim that Zeltiq's discovery responses are not accurate through the testimony of own expert witness. It would be unfair and unwarranted to require Dr. Anderson to undertake the burden of providing that service for him.

## II. ARGUMENT

### A. Dr. Anderson is Not a Fact Witness

Plaintiff seeks to characterize Dr. Anderson as a "fact witness." He is not. Dr. Anderson has never seen or treated Plaintiff, and he has no knowledge of Plaintiff's medical condition or his

6

3472023

CoolSculpting® treatment. (Ex. B., Dr. Anderson Dec., ¶ 3). Although Dr. Anderson and his colleagues at the MGH Wellman Center may have developed the cryolipolysis procedure, Dr. Anderson was not involved in designing the CoolSculpting device, a commercial application of cryolipolysis developed by defendant Zeltiq. (*Id*. at ¶ 5). Nor was Dr. Anderson involved in drafting the warning language that appears in the CoolSculpting Directions for Use or in reporting adverse events relating to CoolSculpting to the FDA. (*Id*.) In short, Dr. Anderson has little to no factual information that can shed light on Plaintiff's claims against Zeltiq in this case.

It is Dr. Anderson's understanding that all of Plaintiff's claims focus on Zeltiq's alleged actions during the FDA clearance process and in marketing the device following clearance by the FDA. Plaintiff alleges that Zeltiq's CoolSculpting System was defective because of inadequate warnings, research, and testing and that Zeltiq was negligent in its post-marketing surveillance. (Ex. D, Amended Complaint, ¶¶ 104, 115, 123). Plaintiff further alleges that Zeltiq negligently and fraudulently underreported the incidence rate of PAH to the FDA and medical providers. (*Id*. at ¶¶ 134, 136, 150, 152). Dr. Anderson was not involved in any of these activities. (Ex. B, Dr. Anderson Dec. at ¶ 5). Dr. Anderson is not a fact witness with respect to these issues.[7]

The threshold for relevance in discovery may be low, but "it is a generally accepted rule that standards for non-party discovery require a stronger showing of relevance than for party discovery." *See, e.g., Pinehaven Plantation Prop., LLC v. Mountcastle Family LLC*, No. 1:12-CV-

---

[7] In his opposition filed in the Florida court, Plaintiff relied on testimony that Dr. Anderson was a member of Zeltiq's Medical Advisory Board between 2012 and 2014, allegedly provided information to Zeltiq pursuant to a licensing arrangement between it and MGH, and drafted a "white paper" about PAH for Zeltiq. However, plaintiff does not even attempt to establish a nexus between those activities and his lawsuit. (Ex. E, pp. 5-7). Rather, his argument focuses on using Dr. Anderson's expertise to refute Zeltiq's responses to requests for admissions. (*Id.,* pp. 11-12). Indeed, plaintiff admits that the responses to the requests for admissions are the *only* reason Dr. Anderson was subpoenaed. (*Id.,* p. 3). Plaintiff plainly can seek to refute the accuracy of those answers through its own, paid expert and through other evidence.

3472023

62, 2013 WL 6734117 (M.D. Ga. Dec. 19, 2013). In another case involving an attempt to compel the production of academic research, the First Circuit found it "noteworthy that the [researchers] are strangers to the [underlying] litigation" with "no dog in that fight."

> Although discovery is by definition invasive, parties to a law suit must accept its travails as a natural concomitant of modern civil litigation. Non-parties have a different set of expectations. Accordingly, concern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs.

*Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1998) (affirming denial of motion to compel production of research materials). Here, the "unwanted burden" the plaintiff seeks to thrust on Dr. Anderson vastly outweighs the minimal potential relevance, if any, of Dr. Anderson's old research.

### B. A Protective Order Is Appropriate Because Plaintiff Can Obtain The Evidence He Seeks From Dr. Anderson Through Other Means

Rule 26 allows courts to issue orders that "protect a party or person from annoyance, embarrassment, oppression or undue burden or expense…" Fed. R. Civ. P. 26(c); *see also, American Automobile Ins. Co. v. Omega Flex, Inc.*, 2016 WL 9526313, *2 (M.D. Fla. 2016) (recognizing that, although the scope of discovery is broad, "the court 'must limit the frequency or extent of discovery' if it determines that the information sought 'is unreasonably cumulative or duplicative or can be obtained from some other source that is more convenient, less burdensome, or less expensive….'"). When evaluating whether to enter a protective order, courts "weigh the need of the party seeking the discovery against any undue hardships created by permitting it." *In re Fosamax Prod. Liab. Litigation*, 2009 WL 2395899, *2 (S.D. N.Y. 2009). If the court finds that undue hardships outweigh necessity it may quash the subpoena altogether or enforce it on limited terms or other conditions. *Id*. In this case, Plaintiff claims he needs to depose Dr. Anderson

3472023

regarding public statements Dr. Anderson made that purportedly contradict statements Zeltiq made in discovery. (Dkt. 34 at p. 2).

In *In re Fosamax,* the plaintiffs made an argument similar to the one Plaintiff is making here in their effort to conduct a non-party deposition of a highly accomplished doctor who made public statements the plaintiffs wanted to use to support their litigation claims. The court found that the doctor's public statements might be tangentially related to the plaintiffs' allegations so the court weighed the plaintiffs' need to obtain the evidence from the doctor. *In re Fosamax*, 2009 WL 2395899, *3. One of the factors the court considered in evaluating the plaintiffs' need was the availability of alternative evidence. *Id*. The court concluded that the plaintiffs failed to establish need because they failed to demonstrate that alternative evidence was not available. *Id*. In this case, Plaintiffs cannot demonstrate need for the same reason. CoolSculpting has been around for years and there are many people who are experts on it. Likewise, Dr. Anderson co-authored his article on PAH over six years ago and there are many doctors that have research and practical experience with PAH that can serve as an expert witness regarding that condition and CoolSculpting. (Ex. B, Dr. Anderson Dec., ¶¶ 6, 7).

Under these circumstances, Plaintiff cannot establish a need to conduct Dr. Anderson's deposition because the evidence he seeks is available through other means. For instance, Plaintiff's experts can rely on Dr. Anderson's public statements; his counsel can cross-examine Zeltiq's experts with those statements, can inquire of Zeltiq's witnesses on those topics, and can use Zeltiq's own documents. Under these circumstances, Plaintiff can obtain the evidence he claims he needs without conducting Dr. Anderson's deposition.

The *In re Fosamax* court did not stop with the needs analysis, although it could have. It recognized that "[d]iscovery may be blocked if permitting it would create an undue burden that

outweighs its necessity." *Id*. In evaluating the burden on the non-party deponent, the court considered both the personal hardship and the wider social consequences of permitting the discovery. *Id*. at *3. The court recognized that, in general, third parties are afforded more sympathy in weighing the burden of discovery because they have no personal stake in the litigation. *Id*. It also recognized that courts are wary of compelling testimony from third party researchers like Dr. Anderson because it risks inadvertent disclosure of protected information which could disrupt the researcher's relationships at work and even jeopardize their career. *Id*. The court also evaluated the social impact of compelling testimony from third party researchers and, in doing so, recognized that

> There is a serious danger that permitting discovery in these situations "inevitably tend[s] to check the ardor and fearlessness of scholars, qualities at once so fragile and so indispensable for fruitful academic labor."

(*Id*. at * 4 quoting *Sweezy v. New Hampshire*, 354 U.S. 234, 262 (1957)). Here, Dr. Anderson's testimony is not relevant to the issues in this case, Plaintiff can obtain whatever information he seeks from Dr. Anderson through other means, and the burden on Dr. Anderson outweighs Plaintiff's need to conduct his deposition.

### C. Quashing the Subpoena is Proper Because Plaintiff is Attempting to Compel Involuntary Expert Testimony

Federal Rule of Civil Procedure 45 allows courts to quash non-party subpoenas when they require "disclosing an unretained expert's opinion **or** information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party." Rule 45(d)(3)(B)(ii), Fed. R. Civ. P. Here, Dr. Anderson is not a retained expert and he has no factual knowledge concerning "the specific occurrences in dispute" in this case. Fed R Civ. P. 45(d)(3)(B)(ii); *see* (Ex. B, Dr. Anderson Dec., ¶¶ 3, 5 and 8). Despite this, Plaintiff seeks to compel involuntary expert testimony from him.

The Federal Rules do not permit such discovery without a showing of "substantial need." *Wi-Lan Inc. v. HTC Corp.*, 951 F.Supp.2d 1291 (M.D. Fla. 2013). As Judge Pizzo held in *Wi-Lan*, a party that seeks to compel the testimony of an unretained expert must demonstrate "a substantial need for the expert's testimony that it cannot obtain without 'undue hardship.'" *Id.* at 1292 (citing Fed. R Civ. P. 45(c)(3)(C) and Advisory Committee Note to Fed R Civ. P. 45(c)(3)(B)(ii)). *See also Klay v. All Defendants,* 425 F.3d 977, 984 (11th Cir. 2005) (discussing Advisory Committee Notes to Rule 45(c)(3)(B)(ii)). The *Wi-Lan* court held that the party seeking to compel such involuntary expert testimony must demonstrate "that there are no other comparable witnesses" that could provide "substantially equivalent testimony to that of the un-retained expert." *Wi-Lan*, 951 F.Supp.2d at 1292 (quoting *Chavez ex rel. v. Board of Educ. of Tularosa Mun. School*, No. CIV–05–380JB/RLP, 2007 WL 1306734, at *6 (D.N.M. Feb. 16, 2007)). Plaintiff cannot make that showing here. *See* Ex. B, Dr. Anderson Dec., ¶¶ 6, 7 (stating "I know that since 2014, others in the scientific and medical community have studied PAH and cryolipolysis. Those professionals possess more relevant and up-to-date information on that topic than I do.")

In addition, none of the information Dr. Anderson may possess about cryolipolysis or PAH describes specific occurrences in dispute in this case. Instead, Dr. Anderson's information results from his study and research that was not requested by a party. Ex. B, Dr. Anderson Dec., ¶¶ 4, 5. Dr. Anderson did not treat the Plaintiff, he has not spoken to the Plaintiff or any of Plaintiff's treating physicians, he does not know anything about Plaintiff's medical care, medical history, family history, diagnosis, prognosis, Plaintiff's need for CoolSculpting, whether Plaintiff was a proper candidate for the procedure, whether Plaintiff possessed any risk factors prior to the procedure, how the procedure was performed, or Plaintiff's current course of treatment. *Id*. at ¶ 3.

When the circumstances described in Rule 45(d)(3)(B) exist, courts, as an alternative to quashing the subpoena may order appearance at the deposition under specified conditions, **if** the Plaintiff: "(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and (ii) ensures that the subpoenaed person will be reasonably compensated." Rule 45(d)(3)(C), Fed. R. Civ. P. This alternative to quashing the subpoena is not applicable in this case because, as discussed above, Plaintiff has access to whatever information he needs from other sources, such as his treating physicians, his own experts who may rely on Dr. Anderson's published materials, and from Zeltiq itself.[8]

### III.   CONCLUSION

For all the foregoing reasons, Dr. Anderson respectfully requests that this Court enter an order precluding him from being deposed in this case and quashing the subpoena requiring him to appear for a deposition.

Dated: May 21, 2020                             Respectfully submitted,

                                                DR. R. ROX ANDERSON,

                                                By his attorney,

                                                /s/  *Jeffrey J. Pyle*
                                                Jeffrey J. Pyle (BBO #647438)
                                                PRINCE LOBEL TYE LLP
                                                One International Place, Suite 3700
                                                Boston, MA 02110
                                                (617) 456-8000
                                                (617) 456-8100 (fax)

---

[8] In the event the Court allows Dr. Anderson to be deposed, Dr. Anderson respectfully requests that the Court require Plaintiff to pay him, in advance, for the time reserved for the deposition. (Ex. B, Dr. Anderson Dec., ¶ 8).

## STATEMENT PURSUANT TO LOCAL RULE 7.1

Pursuant to Local Rule 7.1, I hereby state that on May 20, 2020, I conferred in good faith with counsel for the Plaintiff in an attempt to resolve or narrow the issues presented in this motion.

/s/ *Jeffrey J. Pyle*
Jeffrey J. Pyle

## Certificate of Service

I hereby certify that on May 21, 2020, I electronically filed the foregoing document using the CM/ECF system, and that I served the same, via e-mail and US mail, postage prepaid, upon counsel of record in the underlying case pending in the U.S. District Court for the Middle District of Florida, No. 19-cv-01670, as follows:

*Counsel for Plaintiff Terrance Nelson Cates:*

Louiza Tarassova, Esq.
The Law Office of Louiza Tarrassova, P.A.
2050 State Road 436, Unit 144
Winter Park, FL 32792
Email: louiza@mylawadvocate.com
(Counsel for Plaintiff, Terrance Nelson Cates)

*Counsel for Defendant Zeltiq Aesthetics, Inc.:*

James C. Suozzo, Esq.
Law Office of Robert J. McGuirl
294 Spring Valley Road
Park Ridge, NJ 07656
Email: james.suozzo@rjmlaw.org

Brian T. Guthrie, Esq.
Aimee T. Canty, Esq.
Shook Hardy & Bacon LLP
100 N. Tampa Street, Suite 2900
Tampa, FL 33602
Email: guthrie@shb.com
       acanty@shb.com

/s/ *Jeffrey J. Pyle*
Jeffrey J. Pyle

3472023