# EXHIBIT E

# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

Case No.: 6:19-cv-1670-PGB-LRH

TERRANCE NELSON CATES,

        Plaintiff,

vs.

ZELTIQ AESTHETICS, INC.,

        Defendant.

_____/

### PLAINTIFF'S RESPONSE TO NON-PARTY, DR. R. ROX ANDERSON'S, MOTION FOR PROTECTIVE ORDER AND MOTION TO QUASH DEPOSITION SUBPOENA

Plaintiff, Terrance Nelson Cates, files the forgoing in response to Non-Party, Dr. R. Rox Anderson's Renewed Motion for Protective Order, Motion to Quash Deposition Subpoena and Memorandum of Law in Support, pursuant to Federal Rules of Civil Procedure 26, 30, and 45, and respectfully requests that the Court deny Dr. Anderson's motions and require him to appear at the scheduled deposition on May 20, 2020, at 10:00 am EST.

### BACKGROUND

This is a lawsuit arising out of a defective medical device called the CoolSculpting® System that was designed, manufactured, and distributed by Defendant which caused Plaintiff to suffer a permanent deformity to his body after undergoing the CoolSculpting® procedure as the result of developing Paradoxical Adipose Hyperplasia (PAH).

### ARGUMENT AND MEMORANDUM OF LAW

Rule 30(a) of the Federal Rules of Civil Procedure explicitly states that a party may depose *any* person without leave of court, so long as the deposition would not result in more than 10

depositions being taken, the deponent has not already been deposed in the case, the party seeks to take an early deposition, or if the deponent is confined in prison. Rule 45(d)(3) allows a person to seek relief from the court if a subpoena for deposition: 1) fails to allow a reasonable time to comply, 2) requires a person to attend the deposition beyond geographical limitations allowed by Rule 45(c), 3) requires disclosure of privileged or protected matter, and 4) subjects the person to undue burden. Likewise, a person may seek a protective order pursuant to Rule 26(c) if the deposition would result in "annoyance, embarrassment, oppression, or undue burden or expense.

Dr. Anderson argues that he should be protected from being deposed in this case and that the deposition subpoena should be quashed because: 1) he is not a fact witness, 2) Plaintiff can obtain the same information from other sources, 3) and that he is an involuntary expert witness. Therefore, it appears that Dr. Anderson is seeking to be protected from "undue burden."

In seeking a protective order, it is the moving party's burden to show good cause and the necessity for the issuance thereof.[1] The party seeking the protective order must establish particular and specific facts that support its motion.[2] And, in determining whether a protective order is appropriate, the court must balance the non-moving party's need for evidence versus the "moving party's proffered harm that would result from the deposition."[3] "Courts look with disfavor on motions to prevent the taking of depositions."[4]

---

[1] *Auto-Owners Ins. Co. v. Southeast Floating Docks, Inc.*, 231 F.R.D. 426, 429-30 (M.D. Fla., 2006);
[2] *Ekokotu v. Fed. Exp. Corp.*, 408 F. App'x 331, 336 (11th Cir. 2011).
[3] *Baratta v. Homeland Housewares, L.L.C.,* No. 05-60187-CIV, 2007 WL 9622687, at * 1 (S.D. Fla. 2007).
[4] *Am. Auto. Ins. Co. v. Omega Flex, Inc.*, No. 6:16-cv-1033-Orl-41TBS, 2016 U.S. Dist. LEXIS 193413, at *9 (M.D. Fla. Oct. 19, 2016) citing *Salter v. Upjohn Co.*, 593 F.2d 649, 651 (5th Cir. 1979).

A motion to quash a subpoena must be filed in "the court for the district where compliance is required."[5] But, a person subject to the subpoena may consent to transferring a subpoena related motion to the issuing court.[6]

**I. Why Plaintiff decided to take Dr. Anderson's deposition.**

In December 2019, in the initial stages of this litigation, Plaintiff served Defendant with a Request for Admissions, in an effort to streamline the issues in the litigation and establish basic facts about the CoolSculpting® device. The Requests were based on information that was openly published by Zeltiq's consultants, such as Dr. Anderson, and did not appear to be a point of contention or controversy. In response, the Defendant *denied* most of the requests grounding its denials in evasive objections and asserting that the requests were confusing and difficult to understand.[7] Plaintiff understood that although he could seek relief from the court on the *manner* in which Zeltiq answered the Requests, the court could not compel the Defendant to *admit* to these facts. In other words, even if Plaintiff filed a motion to compel better responses, the Defendant could *still* deny each of the Requests based on different grounds. Consequently, Plaintiff was faced with a losing game.

Due to the fact that the Defendant chose to pursue an aggressive defense in this case and exhibited a hardline refusal to admit to basic facts about its device, Plaintiff had no choice but to resort to an alternate source of information in order to meet his burden at trial of establishing these facts. Because Dr. Anderson had made statements about the CoolSculpting® device that contradicted the Defendant's denials about its product, during his time as a member of its Medical Advisory Board, Plaintiff sought to depose him. The intent of deposing the doctor was not to

---

[5] Fed. R. Civ. Proc. 45(d)(3)(A).
[6] Fed. R. Civ. Proc. 45(f).
[7] Attached as *Exhibit H*.

intrude into his life or unreasonably inconvenience him for the Plaintiff's benefit but because he was in the position of being an independent source of key information about the CoolSculpting® device's ability to cause harm, via PAH, and Zeltiq's knowledge thereof. Had Zeltiq answered Plaintiff's Request for Admissions in an honest and fair way, Plaintiff would probably not have sought out Dr. Anderson's testimony.

Plaintiff, through his undersigned counsel, worked with Dr. Anderson's personal assistant, Beverly Dammin, since February 14, 2020 to coordinate a deposition scheduled for April 16, 2020.[8] Plaintiff asked Dr. Anderson's assistant if Dr. Anderson would be seeking any additional fees to attend the deposition, to which he did not respond but continued to coordinate the deposition.[9] Dr. Anderson's assistant also confirmed with Plaintiff that Dr. Anderson would be a fact witness.[10] Likewise, Plaintiff informed the witness that if he had any concerns regarding disclosure of confidential information or regarding the taking of his deposition, Plaintiff was open to discussion. Dr. Anderson did not raise any concerns whatsoever.[11] Dr. Anderson was duly served on April 10, 2020, in Wilton, Maine by Hart L. Daley, Chief Civil Deputy in Franklin County.[12] On April 17, 2020, one day *after* the date that the deposition was set to occur Dr. Anderson appeared through counsel, and moved to quash the subpoena and for a protective order prohibiting his deposition in this case.[13]

---

[8] Attached as *Exhibit A*.
[9] *Id.*
[10] *Id.*
[11] Attached as *Exhibit B*.
[12] Attached as *Exhibit C*. Proof of Service; Plaintiff had initially began serving the witness well in advance of his deposition at the address where Dr. Anderson instructed to perfect service, but due to COVID-19 the witness left the State of Massachusetts without giving Plaintiff a new address at which to serve him. Therefore, it took some time to locate Dr. Anderson in a remote cabin in Maine where he had been staying.
[13] Dkt. No. 46.

On April 17, 2020 Plaintiff re-issued the subpoena and Dr. Anderson agreed to accept through his counsel, for a deposition set to occur on May 20, 2020.[14]

**II. Dr. Anderson's connection to the CoolSculpting® device is beyond a third-party researcher.**

Dr. Anderson connection to the Defendant's medical device is beyond simply being a third-party researcher of the underlying cryolipolysis process which Zeltiq later commercially developed under the name CoolSculpting®. Contrary to his representations in his motion, Dr. Anderson held a relationship with Zeltiq since as early as 2005, when the company purchased licensing rights to the cryolipolysis process from Dr. Anderson's employer, Massachusetts General Hospital.[15]

According to Zeltiq Aesthetics Inc., Dr. Richard Rox Anderson is one of two inventors of the cooling process which is the basis of the CoolSculpting® device.[16] Dr. Anderson invented the cryolipolysis process while performing research at the Massachusetts General Hospital (MGH), where he still works today.[17] Although, as the doctor states in his Declaration, the research he conducted "was not requested by, or conducted for, Zeltiq," his current employer MGH subsequently *licensed* its cryolipolysis patent rights to Zeltiq in exchange for royalties and milestone payments in 2005.[18] According to SEC Form S-1 filed by Zeltiq on September 23, 2011, which attached a copy of the Amended and Restated Exclusive License Agreement between Zeltiq Aesthetics, Inc. and Massachusetts General Hospital, Dr. Anderson was responsible for working with Zeltiq to disclose any technological information known by him about Cryolipolysis for Zeltiq

---

[14] Dkt. No. 48-1.
[15] Attached as *Exhibit D* 472/709.
https://sec.report/Document/0001193125-11-255395/
[16] *Zeltiq Aesthetics, Inc. v. Daron Scherr, M.D. et. al.,* Case. No.: 2:15-cv-00186. ¶ 10; and, *Exhibit D* p. 472/709.
[17] Dkt. No. 48-2.
[18] Attached as *Exhibit D* p. 121/709; 163/709; 215/709; 216/709; 417/209.
https://sec.report/Document/0001193125-11-255395/

to be able to develop CoolSculpting® System.[19] But, his relationship with the Defendant did not stop there.

Dr. Anderson continued to be involved with Zeltiq after the CoolSculpting® device was cleared by the FDA and went on the market. He actually served as a member of Zeltiq's Medical Advisory Board for at *least* two years, from 2012[20] thru 2014.[21] According to deposition testimony of Zeltiq's Executive Director, Kerrie Jiang, who had worked for Zeltiq since 2011, Zeltiq actually referred some of its initial CoolSculpting® patients who developed Paradoxical Adipose Hyperplasia to Dr. Anderson at his dermatology lab at MGH. Zeltiq received feedback from Dr. Anderson in regard to the serious adverse effect.[22] At Zeltiq's request, in 2012, he also drafted a "white paper"[23] about PAH, which the company used to disseminate to CoolSculpting® providers as late as November 8, 2018.[24] In 2014, Dr. Anderson actually published *two* scholarly articles about cryolipolysis.[25] Most importantly, Dr. Anderson published a scholarly article called "Paradoxical Adipose Hyperplasia After Cryolipolysis" which directly refers to Zeltiq Aesthetics Inc. as the manufacturer of the device that administers the procedure, discusses the adverse effect

---

[19] Attached as *Exhibit D* p. 485/709 ¶2.5.
https://sec.report/Document/0001193125-11-255395/
[20] Deposition testimony of Kerrie Jiang, Zeltiq Aesthetics Inc.'s Executive Director, Regulatory, Clinical and Medical Affairs. Transcript pending. Deposition taken on May 1, 2020 with Defendant's Counsel, James Suozzo, Esq. present.
[21] Attached as *Exhibit E*.
[22] Deposition testimony of Kerrie Jiang, Zeltiq Aesthetics Inc.'s Executive Director, Regulatory, Clinical and Medical Affairs. Transcript pending. Deposition taken on May 1, 2020 with Defendant's Counsel, James Suozzo, Esq. present.
[23] White paper is a detailed or authoritative report. White paper, Merriam-Webster https://www.merriam-webster.com/dictionary/white%20paper
[24] Attached as *Exhibit F*.
[25] Lilit Garibyan, MD, PhD; William H. Sipprell, III, BS; H. Ray Jalian, MD; Fernanda H. Sakamoto, MD, PhD; Mathew Avram, MD, JD; R. Rox Anderson, MD. Three-Dimensional Volumetric Quantification of Fat Loss Following Cryolipolysis. *Lasers in Surgery and Medicine.* Vol. 46:75-80 (2014). https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4123113/

of Paradoxical Adipose Hyperplasia (PAH), states certain facts about PAH that are relevant to this case, and discloses that Dr. Anderson served on Zeltiq's Medical Advisory Board at the time of writing the article and his employer, MGH received royalties for licensing intellectual property to the Defendant.[26]

In 2015, he continued to work with the CoolSculpting® device, and published another article about the device's benefits of causing significant and prolonged decreases in cutaneous sensitivity.[27] Moreover, as recently as July 2018, Dr. Anderson voluntarily provided an interview *promoting* the CoolSculpting® device on a local news outlet in Boston, Massachusetts.[28]

Therefore, Dr. Anderson's statement that the only connection he has to any possible issue in this case is the research he did in early 2000's and the 2014 article he wrote about PAH is not entirely accurate.

**III. Dr. Anderson's status as a researcher and expert in his field does not automatically shelter him from being deposed about facts came to know while working with Zeltiq about the CoolSculpting® device.**

In *Am. Auto. Ins. Co. v. Omega Flex, Inc.*, a case cited by Dr. Anderson, this Court decided a similar matter in the non-moving party's favor. There, the defendant sought a protective order preventing the plaintiff from taking the deposition of two experts who were engaged by defendant at some point prior to the litigation to perform an evaluation on a competitor's product and advise

---

[26] Attached as *Exhibit E*.
[27] Lilit Garibyan, MD, PhD; Laura Cornelissen, PhD; William Sipprell, MD; Joachim Pruessner; Sarina Elmariah, MD, PhD; Tuan Luo, MD; Ethan A. Lerner, MD, PhD; Yookyung Jung, PhD; Conor Evans, PhD; David Zurakowski, PhD; Charles B. Berde, MD, PhD; R. Rox Anderson, MD. Transient Alterations of Cutaneous Sensory Nerve Function by Noninvasive Cryolipolysis. *Journal of Investigative Dermatology*. Vol. 135, 2623-2631 (2015); doi:10.1038/jid.2015.233. https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4640987/
[28] See *Exhibit G*; https://www.wcvb.com/article/the-science-of-coolsculpting-developed-by-boston-doctor/22104415

Case 6:19-cv-01670-PGB-LRH Document 50 Filed 05/06/20 Page 8 of 15 PageID 725

the defendant in the area of their expertise.[29] One of the two witnesses subsequently made public statements while speaking on behalf of the defendant at a town Council meeting about the defendant's own product, admitting that it was dangerous.[30] The other witness, did not make such public statements. This Court held that the witness who made statements while working on behalf of the defendant should *not* be protected from a deposition and that the plaintiff may inquire into the witness's statements about the product that was at issue in the litigation. The defendant presented a similar argument to Dr. Anderson's stating that "similar opinion testimony is readily available from Plaintiff's own experts." In response, this Court stated, "that may be true but there is at least one important distinction. Plaintiff engaged its experts to testify on its behalf whereas [the witness sought to be disposed] was employed by and spoke on behalf of Defendant."[31] The defendant also argued that allowing the deposition of a witness that has expert knowledge would "cause 'personal hardship' because if he can be deposed in this case, then he is subject to being deposed in all litigation involving the same product," but the Court held that if in fact this occurs, each case will be reviewed and evaluated by the court based on the particular facts therein.[32]

      In arguing that he should be protected from being deposed, Dr. Anderson compares himself to the researcher in *In re Fosamax Products Liability Litigation,* to support his contention that allowing a deposition of a third-party researcher could create a chilling effect on beneficial public research. But, the circumstances surrounding Dr. Anderson's research role in CoolSculpting® and that of Dr. Bruce M. Psaty in *In re Fosamax* differ greatly. Dr. Psaty was engaged to serve on the Drug Safety Committee on behalf of the National Academy of Sciences commissioned by the FDA

---

[29] *Am. Auto. Ins. Co. v. Omega Flex, Inc.*, No. 6:16-cv-1033-Orl-41TBS, 2016 U.S. Dist. LEXIS 193413, at *3 (M.D. Fla. Oct. 19, 2016).
[30] *Id.* at *4.
[31] *Id.* at *10.
[32] *Id.* at *11.

"to conduct an independent assessment of drug safety in the United States."[33] The plaintiffs in the case were interested in taking his deposition because the researcher "made public comments in connection with his participation" on the Committee. But, the researcher did not specifically investigate the drug at issue in the lawsuit (Fosamax) and "did not study the potential adverse effects of any particular drug."[34]

To the contrary, Dr. Anderson performed cryolipolysis research on behalf of Massachusetts General Hospital, a non-profit hospital that later licensed its patent rights to the "core technology underlying [the] CoolSculpting® System"[35] to Zeltiq Aesthetics, Inc. in exchange for payment of royalty fees and milestone payments.[36] He served on the Defendant's Medical Advisory Board, wrote at least one document for Zeltiq's commercial use, wrote a scholarly article based on his knowledge of PAH, which he obtained from continuing to be associated with Zeltiq, and even voluntarily took time to be interviewed by Boston's WCVB Channel 5 Medical Reporter Emily Riemer, about the wonders of CoolSculpting® in July 2018. Dr. Anderson is not an arm's length researcher who has no connection to the commercial CoolSculpting® device. He is an entangled participant in the device's commercial success and has first-hand knowledge of Defendant's awareness of the danger of its medical device. He also public statements of fact that are currently being contended by the Defendant in this litigation.

As the court in *Travelers Cas. & Sur. Co. of Am. v. Grace & Naeem Uddin, Inc.* cited,

> "'Simply put, calling someone a non-testifying consulting expert does not mean that he or she is automatically and absolutely shielded from discovery on issues

---

[33] *In re Fosamax Prods. Liab. Litig.*, No. 1789, 2009 U.S. Dist. LEXIS 70246, at *27(S.D.N.Y. Aug. 4, 2009).
[34] *Id.* at *32.
[35] Attached as *Exhibit D* p. 121/709.
  https://sec.report/Document/0001193125-11-255395/
[36] *Id.*

that the party knowingly has injected into the case. As to those issues, the 'expert' is nothing more than an ordinary fact witness.'"[37]

Accordingly, a deponent such as Dr. Anderson, who possess personal knowledge about certain facts at issue in the litigation cannot avoid being deposed just because he served in the capacity of an expert at some point in time or is currently an expert in his respective field.[38]

Dr. Anderson is undoubtedly a renowned researcher and a professor, but he is also an eye witness to key contentions between the parties in this litigation. Plaintiff is not seeking to depose Dr. Anderson because of his expertise in the fields of dermatology and lasers but rather because of what he saw, heard, and knew at the time that he worked with the Defendant and made public statements about its CoolSculpting® device. Dr. Anderson's expert skills and knowledge do not automatically make him an expert witness in every case and do not preclude him from being deposed as a fact witness about information he obtained from doing his work.

Dr. Anderson is different from a third-party researcher because he had a working relationship with the manufacturer of the CoolSculpting® device during a very crucial point in the device's lifecycle. As the device went on the market and consumers began undergoing the CoolSculpting® procedure, Dr. Anderson was a witness to the company's discovery of a very serious adverse effect that the device was found to cause. His involvement in examining PAH patients and giving advice to Zeltiq about the adverse effect gave him a front row seat to the Defendant's knowledge about PAH. Plaintiff, in his Amended Complaint claims that the CoolSculpting® device caused him to develop PAH – Defendant denies that its device causes the

---

[37] *Travelers Cas. & Sur. Co. of Am. v. Grace & Naeem Uddin, Inc.*, No. 08-61868-CIV-COHN/SELTZER, 2009 U.S. Dist. LEXIS 139181, at *15 (S.D. Fla. June 9, 2009).
[38] *Id.* at *15.

adverse effect.[39] Plaintiff claims that the CoolSculpting® device is the only device known to cause PAH and that the condition does not occur naturally -Defendant denies these allegations.[40] Plaintiff claims that the condition is permanent and that he will need multiple invasive surgeries to try to remove it -Defendant denies that PAH does not resolve on its own and that multiple surgeries may be required.[41] Plaintiff claims that Defendant knew that he was at a higher risk of developing PAH as a male -Defendant also denies this claim.[42]

Contrary to Zeltiq's official denials in this litigation, Dr. Anderson has made public statements that contradict the Defendant's denials in regard to each one of these key facts. He made these statements during his close association with and employment by the Defendant.[43] Even though the Plaintiff's paid expert witness may use Dr. Anderson's statements to try to contradict the Defendant's denials at trial, there is no better witness in this case to *prove* Zeltiq's knowledge regarding the severity and permanency of a serious adverse effect caused by its medical device than Dr. Anderson.

The following are just a *few* examples of the contradictory statements:

**Plaintiff's Request for Admission No. 2:** Admit that the purpose of the CoolSculpting® system device is to reduce adipose tissue (fat) via a non-invasive procedure.

**Defendant's Response:** Defendant objects to this request to the extent that it assumes that there is just one "purpose" of the CoolSculpting® system device, or that it is designed to work on all fat, and on the basis of this objection, denied.[44]

---

[39] Attached as *Exhibit H.* ¶¶ 3; 4.
[40] *Id.* at ¶¶ 5; 6.
[41] *Id.* at ¶¶ 7; 8.
[42] *Id.* at ¶ 10.
[43] Attached as *Exhibit E* and *Exhibit F.*
[44] Attached as *Exhibit H.*

**Dr. Anderson's Statement:** "Cryolipolysis[45] is the noninvasive reduction of fat with localized cutaneous cooling."[46]

**Plaintiff's Request for Admission No. 3:** Admit that all of Defendant's CoolSculpting® system devices are known to cause Paradoxical Adipose Hyperplasia (hereinafter "PAH").

**Defendant's Response:** Defendant objects to this request to the extent that it assumes that a cause for PAH has been determined; the pathogenesis remains unknown, and on the basis of this objection, denied.[47]

**Dr. Anderson's Statement:** "Paradoxical adipose hyperplasia is a rare, previously unreported adverse effect of cryolipolysis."[48]

**Plaintiff's Request for Admission No. 7:** Admit that PAH does not resolve on its own.

**Defendant's Response:** Zeltiq objects to the use of the phrase "resolve on its own" as vague and ambiguous, subject to multiple interpretations. On the basis of this objection, denied.[49]

**Dr. Anderson's Statement:** "At this time, there is no evidence of spontaneous resolution of PAH."[50]

**IV. Dr. Anderson has not proffered any specific harm that he would suffer if he is deposed in this case.**

Dr. Anderson has not explained how he would be unduly burdened or harmed by attending the deposition in this case as required by *Ekokotu v. Fed. Exp. Corp.*[51] His Declaration focuses on explaining that he is not connected to this case but it does not state a single allegation about the potential harm Dr. Anderson would face if he had to attend the deposition. To the contrary, pursuant to an earlier Declaration that Dr. Anderson signed, which the Defendant served on

---

[45] CoolSculpting® is synonymous with the Cryolipolysis process.
[46] Attached as *Exhibit E*.
[47] Attached as *Exhibit H*.
[48] Attached as *Exhibit E*.
[49] Attached as *Exhibit H*.
[50] Attached as *Exhibit E*.
[51] *Ekokotu v. Fed. Express Corp.*, 408 F. App'x 331 (11th Cir. 2011)

Plaintiff on April 7, 2020, Dr. Anderson stated that "MGH is currently experiencing a flood of COVID-19 patients whose treatment will consume then next month to two at a minimum" and that his "office is currently closed due to the crisis."[52] Likewise, his assistant stated that the Wellman Center where Dr. Anderson works was closed because the lab and dermatology clinic are non-essential functions of the hospital.[53] Subsequently, Dr. Anderson left Boston, Massachusetts to his remote cabin in Wilton, Maine where he has been residing since at least March 27, 2020.[54] Therefore, it appears that attending a remote deposition during this time would not be an inconvenience, since it will not require Dr. Anderson to miss time in the office or take him away from his patients. Neither did Dr. Anderson state any specific reason in his motions why and how this deposition would cause him undue burden.

**V. Dr. Anderson should not be compensated as an expensive expert witness for his testimony as a fact witness.**

Footnote 10 of Dr. Anderson's motion requests that Plaintiff compensate him for the time reserved for the deposition. In his Declaration, Dr. Anderson states that his current hourly fee at the non-profit hospital is $1,000.00 for treating patients and that he is requesting payment at that hourly rate to attend his deposition.[55] Firstly, Dr. Anderson's request for compensation in a footnote should not be given much weight because the doctor himself did not find it important enough to present a supported argument for such in the body of his motion. Secondly, as stated in *Travelers Cas. & Sur. Co. of Am. v. Grace & Naeem Uddin, Inc.*, just because a witness is characterized as an expert witness does not automatically make him such. Plaintiff is seeking to depose Dr. Anderson about what he knew about the CoolSculpting® device from his working

---

[52] Attached as *Exhibit I.*
[53] Attached as *Exhibit J.*
[54] *Id.;* and Attached as *Exhibit C;* and Dkt. 48-2.
[55] Dkt. 48-2.

relationship with the device's manufacturer, Zeltiq Aesthetics, Inc. Plaintiff is not seeking Dr. Anderson's expert opinion in this case and does not expect him to do anything to prepare himself for the deposition, other than perhaps jog his memory and remember the time that he spent working with the CoolSculpting® device manufacturer. Thirdly, Dr. Anderson had been previously asked about whether he intended to charge any fees for his testimony on March 11, 2020, via email to his personal assistant, Beverly Dammin.[56] He did not make any such request for compensation and continued to coordinate the deposition without any further discussion about payment. Finally, Plaintiff tendered a daily witness fee to Dr. Anderson, which was served on him along with the subpoena on April 10, 2020.[57]

To this day, Dr. Anderson continues to finically benefit from revenues generated by the CoolSculpting® device, as his employer Massachusetts General Hospital collects royalties from the Defendant. Therefore, Dr. Anderson is not in the position of an independent researcher who is being dragged into court incident to his tenuous association with a commercial product which is the subject of litigation. To the contrary, Dr. Anderson is being asked to testify to facts known by him from his close association to and financial benefit from a medical device which he helped Defendant commercialize.

**CONCLUSION**

Plaintiff is requesting that the Court deny Non-Party, Dr. R. Rox Anderson's Renewed Motion for Protective Order, Motion to Quash Deposition Subpoena and allow Plaintiff to conduct a depositions of Dr. Richard Rox Anderson, M.D., pursuant to the relevant caselaw and Rules 26, 30, and 45 of the Federal Rules of Civil Procedure.

---

[56] Attached as *Exhibit A*.
[57] Attached as *Exhibit C*.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this document was filed with the Clerk of the Court via the CM/ECF system, which will send a notice of electronic filing to Shook, Hardy & Bacon LLP, Brian T. Guthrie Esq. and Aimee T. Canty, Esq., e-mail addressesbguthrie@shb.com and acanty@shb.com, and The Law Office of Robert J. McGuirl, James C. Suozzo, Esq., e-mail address james.suozzo@rjmlaw.org, and Johnson Daboll Anderson, PLLC, David S. Johnson, Esq., e-mail address djohnson@jdalegal.com on or about May 6, 2020.

*s/Louiza Tarassova*
By: Louiza Tarassova, Esq.
Florida Bar Number: 96149
The Law Office of Louiza Tarassova, P.A.
2180 N Park Ave. Suite 208
Winter Park, FL 32789
Telephone: (407) 622-1885
Fax: (407) 536-5041
E-Mail: louiza@mylawadvocate.com
Secondary E-Mail: service@mylawadvocate.com

*Counsel for Plaintiff, Terrance Nelson Cates*